BAKER, JUDGE:
Claimants Fred and Nettie Ratcliff brought a claim for property damage and Lawrence Ratcliff brought a claim for personal injury to his son, Benjamin Ratcliff, both of which claims occurred as a result of hillside slippage on County Route 29/9 (also known as Webb Road) in Crum, Wayne County. County Route 29/9 is a road owned and maintained by respondent in Wayne County. The Court is of the opinion to deny the property damage claim and to award the personal injury claim for the reasons more fully stated below.
The incident giving rise to the property damage claim occurred on September 7 through 12, 1994. County Route 29/9 is an off-shoot road of the Tolsia Highway in Wayne County. The road is a local service route of secondary priority with a single twelve foot lane. In 1978, claimants Fred and Nettie Ratcliff moved to *149 property located on. County Route 29/9 where they reside[1] in a manufactured home with an addition on the front. There is a porch on the front of the house. During 1990 the hillside along the road began to slip. The hillside slip ended up against the side of claimants’ manufactured home. This hillside slip caused damage to their manufactured home. Then, the road was cleaned and repaired by respondent and later in 1990 steel pilings were installed in an attempt to stabilize the hillside. During t hat ye ar t here w as a r ain s torm after w hich t he s teel p ilings f ell o nto a building owned by claimants, destroying it. The hillside also fell against the house. Where the road first slipped, it pushed the house in, nudging it against the floor. Respondent straightened the step of the road, but did not remove the slip. According to respondent’s DisForce supervisor, Jim Alford, the steel pilings installed had failed because the weight from the hillside slide above the road caused the steel to fail and bend allowing dirt or sloughage to slip into claimants’ yard.[2] Claimants were compensated $700.00 by respondent at that time for the damages to their property.
Sometime prior to September 7, 1994, the hillside in the area again slipped. During an investigation by Ben Savilla, an investigator for respondent, information provided by the Federal Mine Reclamation indicated that the hillside slippage was caused by mine subsidence from a nearby mine. The investigator went to the site, took photographs and did sightings of how the. hillside slip had moved off of the State’s right-of-way. Since the expense of core sampling outweighed its benefits, core s ampling w as n ot u tilized. The s lope o f t he h illside s lip a ppeared t o b e a gradual twenty feet. The bank appeared to be eight to nine feet high and the hillside was determined to be twelve to thirteen feet from the bottom of the bank to the top of the bank. The front porch is approximately twelve to fifteen feet from the hillside. Asixto eightfootby ten foot building and a fourroom house arealsoonthe property.[3]
From September 7 through 12, 1994, respondent again effected repairs to the road. After the failure of the piling wall, respondent’s DisForce elected to relocate the roadway into the hillside which would provide a more stable environment. The operation conducted by respondent was more of a removal. The hillside had slipped onto the blacktop. Earth and rock had to be removed. *150 Respondent used tracks, a track loader and excavator to complete the job. Both the hillside slip and the steel pilings were removed. The road itself was moved back into the h illside a nd s tabilized in o rder toa llow f or t he flow oft raffle. R espondent removed the wet, unstable material that had slid and replaced it with dry material. When the blacktop was removed, stone was placed on the dirt in order to stabilize the road. Eventually, the road was moved about a lane inside the hill towards the ditch line to reposition the road away from where it had slipped over the hillside. After the work was completed, respondent cleaned the area and made sure no sloughage was left on the hillside above or below the loose material for slide prevention. This work performed by respondent in September 1994 appeared to have stabilized the road.
Currently, the hillside slip is ten feet at one spot, and about four feet at another spot. The slip contains dirt, rocks of different sizes, and a few trees. As a result of respondent’s past road repairs, the slip was pushed further down the hillside. Even after necessary road repairs, this hillside slippage continued. Claimants’ manufactured home was once again damaged. The floor had to be replaced, new sills were installed under the floor, and new siding was put on the house. The cost to claimants was estimated at $2,000.00. No appraisals or valuations have been made of the property or the manufactured home. Claimants had grade work completed on their property by a friend from Dunlow about three months prior to the June 23, 1999, hearing. A small grader was used to landscape the front yard and a two to six foot path was cut out of the slide. Because the hillside slip continues, claimants are unable to use their property in a normal manner. They are in constant fear of the area around the slip.
The incident giving rise to the personal injury claim occurred on September 15, 1994. Benjamin Ratcliff is the son of claimant Lawrence Ratcliff, and the grandchild of claimants Fred and Nettie Ratcliff. On the day in question, Benjamin Ratcliff, who is now eight years of age, but was about three years old at that time, was playing in his grandparent’s yard on County Route 29/9 about one and one-half feet from the porch. During the period of September 7-12, 1994, respondent had taken out part of the hillside slip. On this particular date of the incident an oblong rock, about three to four pounds with sharp edges, fell about six feet from the top side of the hill striking Benjamin Ratcliff in the forehead about three inches above his nose. This incident occurred about four feet from the porch.
Claimant Nettie Ratcliff witnessed the accident. Claimant Lawrence Ratcliff was not present at the time of the accident, but was informed of the accident by his mother and came to the scene within five minutes. When claimant Lawrence Ratcliff saw that his son was cut and bleeding, he immediately took him to Three Rivers Medical Center in Louisa, Kentucky. At Three Rivers Medical Center Benjamin Ratcliff received stitches and medication. The medical expenses incurred were paid by his medical card.
*151 Before the incident, Benjamin Ratcliff had no pre-existing injures. He now appears to suffer from two to three severe headaches per week, which last about an hour. At the onset of a headache, Benjamin Ratcliff requires Motrin or Children’s Tylenol to relive his headache pain. He has a knot on his forehead about the size of a nickel and a scar from the stitches. Also, Benjamin Ratcliff is nearsighted and requires glasses. The last time he had been seen by a physician was two months prior to the June 23, 1999, hearing. At the request of the Court, Benjamin Ratcliff was examined by Dr. Tommasina Papa-Rugino, a pediatric and adult neurologist. Dr. Papa-Rugino ordered an MRI which was performed upon the infant and a report of the results of the MRI was provided to her. She then issued a clinical report in which she stated “that the prognosis of post traumatic headaches is usually excellent and the headaches only persist for a short period of time. It is unlikely, although not unheard of, that post traumatic headaches will persist for so long subsequent to an injury.” The Court concludes from the physical examination and the clinical record that there is little probability that the headaches which Benjamin Ratcliff complains of now are a result of the rock having struck him on his head in 1994.
The position of respondent was that it properly maintained County Route 29/9. When respondent’s records were checked by the Wayne County Storekeeper, Geoffrey A dkins, f ound no complaints o n o r b efore 1994. R espondent’s de sign employee, Jim Messer, found no complaints in the design records which date back to about twelve to fifteen years. Respondent was not noticed about the hillside slide problems. Only records for the hillside slip in September 1994 could be found by respondent. Since 1994, there have been no further complaints received regarding the hillside slip problem.
When respondent is on notice of instability of a hillside slip, and fails to take effective measures to deal with the problem, the failure to do so is negligence. Bailey & Lucion v. Division of Highways, 20 Ct. Cl. 55 (1994).
In the case at hand, respondent has been on actual notice of the condition of County Route 29/9 (Webb Road). Evidence adduced at the June 23, 1999, hearing demonstrated that complaints were made previously to respondent regarding the condition of the hillside slip. Four separate documents produced by claimants at the June 23, 1999, hearing demonstrate that respondent was placed on notice in 1989 regarding the problem. Respondent’s records show that on two prior occasions in 1990, repair of the hillside slip was necessary.[4] Afterwards, respondent has been on the property several times in order to take corrective measures and to stabilize the *152 hillside slip. However, the problem persisted and the damage continued. There is sufficient evidence of negligence on the part of respondent upon which to base liability in these claims.
Notwithstanding respondent’s negligence, the Court is of the opinion to deny the property damage claim. Claimants presented no evidence of the cost of repairs to their property. This Court will not speculate.as to the claimants’ property damages.
In the claim for and on behalf of Benjamin Ratcliff, the Court is of the opinion to make a total award of $6,000.00 for his personal injuries from the rock fall. The Court makes an award to Lawrence Ratcliff as the legal guardian of Benjamin Ratcliff in the amount of $4,000.00 for his pain and suffering as well as the disfigurement, scar, and the knot on his forehead. In addition, the Court makes an award in the amount of $2,000.00 to Lawrence Ratcliff as the legal guardian of Benjamin Nichols Ratcliff for the child’s future medical needs, if any, necessitated by the injuries which he received as the result of being struck by the rock.
The claim of Fred and Nettie Ratcliff is disallowed.
Award of $6,000.00. to Lawrence Ratcliff as the guardian and next friend of Benjamin Nichols Ratcliff, an infant.

 Currently, claimant Lawrence Ratcliff, his wife, and two sons occupy the property. At the time of the time of the personal injury to Benjamin Ratcliff, he was living in another house about forty feet away. Claimant Nettie Ratcliff currently resides behind the manufactured home.

 DisForce is respondent’s heavy maintenance group.

 The house is located in front of the manufactured home, but down over the hill, unaffected by the hillside slip.

 Wayne County Storekeeper, Geoffrey Adkins, keeps records only for six months to one year. The last search of the records by the Wayne County Storekeeper regarding this claim was completed in 1995 or 1996 and the hearing was conducted on June 23, 1999.